## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | |
| 201 Gibraltar Road, Suite 150 | : | CIVIL ACTION |
| Horsham, PA  19044 | : | |
| Plaintiff, | : | |
| v. | : | No. |
| CHRISTOPHER M. PEDONE | : | |
| 3530 N. Courtenay Parkway | : | |
| Merritt Island, FL  32953 | : | |
| and | : | |
| HOWARD S. BEYER | : | |
| 3530 N. Courtenay Parkway | : | |
| Merritt Island, FL  32953 | : | |
| Defendants. | : | |

## COMPLAINT

1.     Plaintiff, AAMCO Transmissions, Inc. ("Plaintiff" or "ATI"), is a Pennsylvania corporation, with its principal place of business located at 201 Gibraltar Road, Horsham, Pennsylvania  19044.

2.     Defendant, Christopher M. Pedone ("Defendant" or "Pedone"), is an adult individual who is a citizen of the State of Florida with a principal place of business at 3530 N. Courtenay Parkway, Merritt Island, FL  32953.

3.     Defendant, Howard S. Beyer ("Defendant" or "Beyer"), is an adult individual who is a citizen of the State of Florida with a principal place of business at 3530 N. Courtenay Parkway, Merritt Island, FL  32953.

4.     This Court has diversity jurisdiction pursuant to 28 U.S.C.A. §1332 based upon the diverse citizenship of the parties and the amount in controversy which exceeds $75,000 exclusive of interest and costs.

5.    Venue lies in this District pursuant to 28 U.S.C.A. §1391, in that ATI resides in this District, Defendants have transacted business with ATI continuously over the last several years in this District and the claims arise under a contract that was made in this District.

6.    Since at least 1963, ATI has been engaged in the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission repair centers throughout the United States and Canada.  ATI is the world's largest franchisor of transmission repair centers.

7.    ATI is the owner of the following marks registered on the principal register of the United States Patent and Trademark office for "automobile repair services":

| Registration # | Description |
| --- | --- |
| 851,209 | The name "AAMCO". |
| 860,330 | Pictorial representation containing the name "AAMCO". |
| 1,127,710 | Pictorial representation containing the name "AAMCO Transmissions". |

8.    ATI is engaged in interstate commerce in, inter alia, the business of franchising or licensing others to use the mark and name "AAMCO" in the operation of transmission repair centers throughout the United States and Canada.

9.    The "AAMCO" trade name and trademark have become universally associated with the repair of motor vehicle transmissions and the operation of transmission repair centers. As a result, ATI owns common-law trade name and trademark rights in the name "AAMCO" and in the marks described above.  By virtue of the long use and promotion and the resulting fine public reputation of the trade name "AAMCO", there exists a secondary meaning in the name "AAMCO" and the above marks.

10.     Large sums of money have been spent in advertising and promoting the services sold under ATI's trade name and trademarks, and today ATI has a substantial business and a long established goodwill associated with the name and the above marks in connection with the services provided under its trade name and trademarks.

11.     ATI has a vital interest in protecting its trade name and trademarks and the preservation and protection thereof are essential to the maintenance of ATI's quality transmission repair centers and the goodwill and reputation associated therewith.  To supervise and control use of its trade name and trademarks, ATI has established standards and policies governing the quality of service to be provided to the public and has established procedures calling for the inspection of franchisees' centers to determine that the standards and policies are being followed.

12.     The AAMCO Transmission Center at issue herein is located at 3530 N. Courtenay Parkway, Merritt Island, FL  32953 (the "Center") and has been operating under the AAMCO trademark at the Center address years before the Defendants became the AAMCO franchisees for the location.  The Center was first established under the AAMCO trademark in September of 1994, and has been advertised in the Merritt Island community as "AAMCO" ever since.

13.     On September 19, 2001, ATI and Defendants entered into a franchise agreement, pursuant to which Defendants were authorized to use and did use the name and mark "AAMCO" in connection with the operation of the Center (the "Franchise Agreement").  A true and correct copy of this Franchise Agreement is attached hereto, marked as Exhibit "A" and incorporated herein by reference.

14.     In September of 1998, Defendant Beyer attended ATI's intensive, four (4) week, owner training class in Pennsylvania.

15.     In September of 2001, Defendant Pedone attended ATI's intensive, four (4) week, owner training class in Pennsylvania.

16.     As provided under the Franchise Agreement, ATI shared with the Defendants its proprietary systems, information and trade secrets for operating a successful automotive repair business which ATI has developed over its more than 50 year history.

17.     In addition, Defendants were provided ATI's proprietary manuals, training materials, fleet accounts, customer lists and operating software.

18.     After attending AAMCO's training program, Defendants operated the Center under, and in accordance with, the Franchise Agreement.

19.     ATI provided all franchise support services and other obligations owed to Defendants as franchisees under the Franchise Agreement.

20.     At no time did either party disavow the Franchise Agreement.  Indeed, both parties continuously manifested an assent to the Franchise Agreement and its terms.

21.     In a letter dated May 29, 2013, ATI gave written notice to Defendants that they were in breach of the Franchise Agreement for failure to pay monies due and owing thereunder. In accordance with the Franchise Agreement, the Defendants were given ten (10) days to cure their payment breaches. A true and correct copy of the said letter is attached hereto and made a part hereof at Exhibit "B".

22.     Thereafter, Defendants failed to cure their payment defaults.

23.     In a letter dated July 11, 2013, ATI notified the Defendants that, effective immediately, the Franchise Agreement was terminated and cautioned Defendants that they must honor their non-compete obligations set forth in the Franchise Agreement.  A true and correct copy of the said letter is attached hereto and made a part hereof at Exhibit "C".

24.     Section 19.1 of the Franchise Agreement, entitled "Procedures after Termination,"

provides that upon termination of the Franchise Agreement "for any reason", Defendants shall:

(1)  Promptly pay AAMCO all sums due and owing.

(2)  Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(3)  Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(4)  Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(5)  Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

*See* Franchise Agreement, ¶ 19.1(a), attached hereto at Ex. "A".

25.     Section 19.2 of the Franchise Agreement, entitled "Covenant Not-to-Compete,"

provides in pertinent part that:

> Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO. Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark. Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants…For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center. The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

*See* Franchise Agreement, ¶ 19.2, attached hereto at Ex. "A".

26.     Despite the termination of their franchise and any further authority to continue in business under and the use of the AAMCO name, Defendants have refused to take the actions required by the Franchise Agreement, to remove the AAMCO name and trademark from the Center and cease all use of ATI's systems and AAMCO merchandising materials there and, instead, using ATI's AAMCO advertised telephone number for the Center, have continued to operate the Center under the name and style "AAMCO Transmissions", to hold themselves out to be an authorized AAMCO franchisee, and to use the AAMCO trade name and trademark, without any license or right whatsoever.  Further Defendants have failed and refused to return any of ATI's trademarked or proprietary items in their possession.

<u>COUNT I - TRADEMARK INFRINGEMENT</u>

27.     ATI hereby incorporates by reference, as if fully set forth, paragraphs 1 through 26 above.

28.     Defendants have materially breached the terms and conditions of the Franchise Agreement by their failure to cure the above described payment defaults. The resulting termination of the Franchise Agreement has extinguished any contractual right of Defendants to use ATI's marks.

29.     Defendants have willfully and without justification failed and refused to comply with the post-termination provisions of the Franchise Agreement which requires Defendants to, among other things, discontinue all use of the AAMCO name and trademark, surrender to ATI all items containing the AAMCO name and trademark, and transfer to ATI any and all telephone numbers listed under the AAMCO name.

30.     Unless Defendants are enjoined, ATI believes and therefore avers that Defendants will continue their infringing use of the AAMCO trade name and trademarks at the Center.

31.     Unless Defendants are enjoined, their continued improper use of the AAMCO trade name and trademarks will greatly impair the value of the AAMCO trade name and trademarks, as well as ATI's reputation and goodwill.

32.     Defendants' continued failure and refusal to comply with those obligations have caused and continue to cause ATI irreparable harm to its reputation and goodwill, and substantial financial losses.

33.     The actions and conduct of Defendants as set forth in this Complaint constitute willful trademark infringement in violation of 15 U.S.C.A. §1125.

34.     The damages that have been occasioned by the willful trademark infringement that has been engaged in by Defendants are irreparable and continuing, and ATI has no adequate remedy at law.

35.     Pursuant to 15 U.S.C.A. §1116, ATI is entitled to injunctive relief to protect its rights under the Lanham Act.

36.     Pursuant to 15 U.S.C.A. §1117, ATI is entitled to recover Defendants' profits at the Center for the period since July 11, 2013, during which he has engaged in the above-described willful trademark infringement, plus any damages sustained by ATI, which damages may be trebled, plus the costs of this action and attorneys' fees.

## COUNT II - BREACH OF FRANCHISE AGREEMENT
## SPECIFIC PERFORMANCE

37.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 36 above.

38.     As a result of the termination of Defendants' franchise, ATI is entitled to specific performance of Section 19.1 of the Franchise Agreement, which requires Defendants to, among

other things, discontinue all use of the AAMCO name and trademark, surrender to ATI all items containing the AAMCO name and trademark, and transfer to ATI any and all telephone numbers listed under the AAMCO name.

39.     ATI is entitled to specific performance of Section 19.2 which provides that for a period of two years following termination, Defendants will not, directly or indirectly, engage in the transmission repair business within a radius of ten (10) miles of the former Center, or within a radius of ten (10) miles of any other AAMCO center.

40.     Defendants continue to operate a transmission repair business from the former Center location in violation of the covenant not-to-compete contained in the Franchise Agreement and in violation of ATI's trademark rights as stated in Count I above.

41.     Defendants have misappropriated the goodwill generated under the AAMCO name and continue to use ATI's proprietary methods, systems, and materials, as well as the AAMCO advertised telephone number for the Center.

42.     Defendant's failure to honor the procedures after termination stated in Section 19.1 of the Franchise Agreement and his conduct in continuing a transmission repair business within ten (10) miles of the former Center in violation of the covenant not-to-compete (i.e., Section 19.2 of the Franchise Agreement) interferes with ATI's ability to develop the market, retain goodwill and re-establish the presence of the AAMCO name in this market, all of which cause ATI irreparable harm.

43.     ATI has no adequate remedy at law for damages, and unless specific performance of the procedures after termination and covenant not-to-compete is ordered and injunctive relief granted to restrain Defendants, ATI will continue to suffer irreparable harm.

## COUNT III - COMMON LAW UNFAIR COMPETITION

44.    ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 43 above.

45.    Defendants' conduct is in violation of the common law of unfair competition in that they are:

        (a)    causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services in connection with their conducting of business at the former Center using ATI's trade name and trademarks;

        (b)    causing likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by ATI of their conducting of business at the former Center; and,

        (c)    representing to the public that their competing business has ATI's approval, which it does not.

46.    These acts by Defendants have been committed willfully and with the intention of deceiving and misleading the public.

47.    Defendants' unlawful trade practices will irreparably harm and injure ATI's trademarks, trade name, reputation and goodwill.

48.    ATI is without an adequate remedy at law.

## COUNT IV - BREACH OF FRANCHISE AGREEMENT
## FAILURE TO PAY FRANCHISE AND OTHER FEES

49.    ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 48 above.

50.     Defendants have failed to make certain payments to AAMCO which remain due

and owing pursuant to the Franchise Agreement.  This sum is comprised as follows:

| | | |
|---|---|---:|
| Parts Account | $ | 347.10 |
| Intershop | | 1,826.53 |
| Recoverable Expense | | 8,237.50 |
| Nat'l Creative Adv. | | 2,550.00 |
| Internet Adv. | | 148.58 |
| Franchise Fees | | |
|    Reported | | 25,127.12 |
|    Estimated[1] | | 34,560.50 |
| Audit | | 31,322.24 |
| FOCUS | | 783.75 |
| Telephone | | 36.91 |
| Interest | | 24,389.20 |
| Less: Arbitration Award | | (61,278.35) |
|    dated  11/2/12 | | |
| Total | $ | 68,052.08 |

51.     In addition to the foregoing debt, Defendants, pursuant to Section 7.2 of the

Franchise Agreement, were obligated to participate and pay for advertising programs with other

franchisees in their market area and agreed that, if they failed to pay the amounts due to their local

advertising pool, then ATI would have the right to recover such sums from them.

52.     Defendants have failed and refused to honor their ad pool payment obligations and

ceased making weekly payments even though they continued to receive the benefit of local

AAMCO advertising that continued to be placed.

53.     Defendants have failed to pay $61,200.00 due to the Orlando AAMCO Dealers

Advertising Pool Inc. (the "Advertising Pool") which sum remains due and owing.

---

1.     In addition, in breach of the Franchise Agreement, Defendants have failed to remit fifty
eight (58) weekly business reports for the weeks ending 01/21/12, 03/10/12 and 03/24/12 through
week ending 10/06/12; and Defendants have failed to pay the applicable franchise fees due on
these business reports; the amounts of which presently are unknown.  Based on historical figures
as reported to ATI by Defendants, ATI has estimated the franchise fees due on the eight (58)
weekly business reports to be $34,560.50.

54.     Despite ATI's demands, Defendants have failed and refused, and continues to fail and refuse, to pay the monies due and owing.

## COUNT V – PROMISSORY NOTE

55.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 54 above.

56.     On or about September 17, 2010, Defendant Pedone executed a Promissory Note in favor of ATI in the amount of $25,555.59 for certain indebtedness due to ATI by the Center. A true and correct copy of the Promissory Note is attached hereto as Exhibit "D".

57.     By virtue of his failure to make payments when due, Defendant Pedone has defaulted on the Promissory Note leaving an unpaid balance of $10,700.00, which sum remains due and owing to ATI.

58.     Pursuant to the Promissory Note, ATI is entitled to collect the Note's unpaid balance of $10,700.00 plus attorneys fees in the sum of $1,926.00 plus continuing interest.

## COUNT VI – COSTS AND ATTORNEYS' FEES

59.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 58 above.

60.     Pursuant to Section 21.5 of the Franchise Agreement, Defendants agreed to pay all costs incurred by ATI in bringing this action, including attorneys' fees.

61.     Pursuant to 15 U.S.C.A. §1117, ATI is entitled to recover the costs of this action and attorneys' fees.

62.     Upon the filing of this Complaint, Plaintiff ATI has incurred a filing fee of Three hundred fifty dollars ($350.00) in this matter.

63.     Plaintiff ATI has incurred and continues to incur attorneys fees in the pursuit of this action.

## COUNT VII – DECLARATORY JUDGMENT

64.     ATI hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 63 above.

65.     Pursuant to 28 U.S.C. §2201 and 42 Pa.C.S.A. §7533, this Court has jurisdiction to determine disputes between Plaintiff and Defendants concerning the validity, formation, operation and termination of the Franchise Agreement.

66.     A dispute exists between Plaintiff and Defendants as to whether Defendants (1) properly entered into a valid Franchise Agreement with ATI; (2) are in default of the Franchise Agreement; and (3) have had their contract rights properly terminated under the Franchise Agreement.

67.     Plaintiff did properly register, sell and enter into the Franchise Agreement with Defendants and obeyed all applicable laws.  Neither Plaintiff nor its agents, employees, brokers or representatives made any misrepresentations or omissions of any material facts in connection with Defendants entering into the Franchise Agreement.

68.     Plaintiff has performed all of its obligations under the Franchise Agreement and has not negligently or willfully caused any damage to Defendants.

69.     Plaintiff has properly determined that Defendants were in violation of the Franchise Agreement as they, inter alia refused to pay sums due and owing under the Franchise Agreement.

70.     Pursuant to the Franchise Agreement, Plaintiff may terminate the Franchise Agreement for one or more of the breaches set forth above.

WHEREFORE, Plaintiff AAMCO Transmissions, Inc. demands a judgment in its favor and a declaration that the Franchise Agreement is valid, was properly entered into, that Plaintiff has fulfilled all of its obligations under the Franchise Agreement, that Plaintiff did not misrepresent and/or omit any material facts, that Plaintiff has not negligently or willfully caused damage to Defendants, and that Plaintiff may terminate Defendants' contract rights under the Franchise Agreement for one or more of the breaches described in the above set forth Counts of this Complaint.

RELIEF SOUGHT

WHEREFORE, ATI requests the following relief:

A.      That Defendants, their agents, servants, employees and those persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

(i)      using in any manner, including without limitation on or in any signs, stationery, letterheads, forms, printed matter or advertising, the proprietary marks "AAMCO", "AAMCO Transmissions" or similar names or marks;

(ii)     advertising or otherwise holding themselves out, directly or indirectly, as an authorized franchisee of ATI or as being in any way sponsored by or connected or associated with ATI; and,

(iii)    doing anything to cause potential purchasers of transmission repair services to believe that any services or repairs performed by Defendants or any business with which they are associated originate with ATI or are endorsed or sponsored by ATI.

B.      That Defendants deliver to ATI or to persons designated by the Court all materials, including without limitation signs, stationery, letterhead, forms, software, printed

matter and advertising, which contain the proprietary marks "AAMCO", "AAMCO Transmissions", or similar names or marks.

C.      That Defendants transfer to ATI or at ATI's direction, each telephone number listed by him under the designation "AAMCO Transmission" or any similar designation and execute any instruments and take such steps as may be necessary or appropriate to transfer each such telephone number and if he shall fail to do so, that counsel for ATI be designated by the Court as his attorney-in-fact to execute such documents in his name and in his place.

D.      That Defendants be ordered to provide an accounting pursuant to 15 U.S.C.A. §1117(a), of their profits at the competing business and that these profits be awarded to ATI, along with all other damages for Defendants' violation of ATI's trademark rights, trebled in accordance with 15 U.S.C.A. §1117(a).

E.      That Defendants be enjoined from breaching the covenant not-to-compete contained in the Franchise Agreement – i.e., operating directly or indirectly any transmission repair business for two years at or within ten (10) miles of the location of the closed Center or any other AAMCO center.

F.      That Defendants be ordered to file with the Court and to serve on ATI within thirty (30) days after the issuance of any preliminary and/or permanent injunction herein, a report in writing, under oath, setting forth in detail the measures undertaken by Defendants to comply herewith.

G.      That a money judgment be entered against Defendants and in favor of ATI and that ATI be awarded money damages as requested herein.

H.      That the Court enter a Declaratory Judgment that:

(i).     Plaintiff did properly register, sell and enter into the Franchise Agreement with Defendants and obeyed all applicable laws;

(ii).     Plaintiff has performed all of its obligations under the Franchise Agreement and has not negligently or willfully caused any damage to Defendants;

(iii).     Plaintiff has properly determined that Defendants are in violation of the Franchise Agreement; and

(iv).     Plaintiff may properly terminated the Franchise Agreement.

I.     That ATI be awarded its reasonable attorneys' fees, costs of court and all other and further relief to which it may be entitled.

Date: 9/4/13

William B. Jameson
Attorney ID. # 58949
Attorney for Plaintiff
AAMCO Transmissions, Inc.
201 Gibraltar Road
Horsham, Pennsylvania 19044
(610) 668-2900

# EXHIBIT A

## AAMCO TRANSMISSIONS, INC.
### Franchise Agreement

This Agreement has been entered into this    19th   day of   September   19   2001 at Bala Cynwyd, Pennsylvania between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Bala Cynwyd, Pennsylvania, referred to as "AAMCO", and

Christopher M. Pedone
and
Howard S. Beyer                referred to as "Franchisee".

AAMCO has developed methods, techniques and systems for the operation of centers devoted exclusively to transmission repair. AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandising of Franchisee's center.

Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

Franchisee acknowledges that he has conducted a thorough and independent investigation and based on that investigation, Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Agreement in recognition of these considerations and of the mutual agreements expressed herein.

1.1 **Franchise.** This Agreement is for the operation by Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows Franchisee to use the trade name and trademark "AAMCO" only upon fulfillment of the following conditions:

(a) Franchisee must successfully complete AAMCO's training course.

(b) Franchisee must equip and inventory the center/location according to AAMCO's standards before opening; this requirement includes the appearance of the center, all to be done in accordance with sections 8.1 and 9.2 of this Agreement.

(c) Franchisee must secure insurance as required by section 12.1 of this Agreement.

1.2 **Location.** The center shall be located as follows:

3530 N. Courtenay Parkway
Merritt Island, FL  32953

During the term of this Agreement, Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

1.3 **Market.** AAMCO expressly reserves the right to grant additional franchises in the same county or MSA/PMSA. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 100,000 motor vehicle registrations.

2.1 **Trademark.** Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". Franchisee expressly agrees not to register the word "AAMCO" as part of his firm or corporate name.

3.1 **Franchise Fee.** Starting with the opening of his center, Franchisee agrees to pay a weekly franchise fee to AAMCO of seven (7)% of the gross receipts of the preceding week. "Gross receipts" shall mean all forms of consideration received for parts or services in the center, including supplies and accessories, regardless of whether for manual or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

4.1 **Business Reports.** Starting with the opening of his center, Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with copies of the repair orders for all work completed during the preceding week and such other information or reports as AAMCO may request. These should accompany a check or money order for the amount required under section 3.1, and should be mailed so as to be received no later than Tuesday of each week. Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's franchisees. In addition to an accurate report of gross receipts on the forms prescribed by AAMCO, business reports shall also consist of all home office copies of repair order forms used in the center during the reporting period which shall be attached to the prescribed form.

AT-94-9 (1) Resale  - 7%                 1

**5.1   General Policies.**   Franchisee agrees that for the term of this Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a specialist in the transmission field, and the quality of repairs associated with the name AAMCO.

Franchisee agrees that, regarding the hiring of employees for his center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions. Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable. Franchisee agrees to direct any of his employees, including any customer service manager employed in his AAMCO center, to attend meetings and to meet training requirements as AAMCO may determine.

**5.2   Performance Standards.**   Except as otherwise approved in writing by AAMCO, which approval shall not be unreasonably withheld, Franchisee agrees that during the period of this Agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time including those set forth in AAMCO's training manuals, as modified and/or updated from time-to-time as determined by AAMCO in its sole discretion.

Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee. Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the inspection shall be necessary.

Franchisee acknowledges that any customer complaints cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs. Franchisee agrees that any customer complaints generated by his center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate. Franchisee agrees to operate his center in such manner so as to avoid customer complaints. Franchisee agrees that he will deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his center. Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO center. Franchisee specifically agrees to conduct his center in a manner so that it will not detract from nor bring into disrepute the trademark or name "AAMCO".

All personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe. Franchisee further agrees to attend such meetings and training sessions as AAMCO may require, and to direct any of his employees to attend such meetings and training sessions, including directing the center's technicians to obtain technical certification, as AAMCO may require, pursuant to AAMCO's technical certification program or a comparable technical certification program which complies with AAMCO's specifications.

In his operation of his center, Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO multi-check, AAMCO repair order, AAMCO warranty cards and AAMCO reporting forms.

Franchisee agrees to offer to customers of his center all services, products and/or warranties which AAMCO may prescribe. Franchisee acknowledges that AAMCO retains the exclusive right to make modifications from time-to-time to such services, products and/or warranties.

**5.3   Appearance Standards.**   Franchisee agrees to keep his center's premises in a clean, wholesome, attractive and safe condition, and to keep it in good maintenance and repair. Franchisee agrees to maintain the interior and exterior painting and decor, and furnishings of his center in such a manner and form as may be required by AAMCO. Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are required or approved by AAMCO.

**5.4   Maintenance Standards.**   Franchisee recognizes that it is in the mutual interests of both parties to this Agreement that the AAMCO center he operates be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

**5.5   Non-Disclosure.**   Franchisee agrees that he will not furnish any information concerning AAMCO's service program, training, diagnostic and technical materials, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in Franchisee's AAMCO center.

Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO service program, and of all books, manuals or documents provided to Franchisee for the operation of his center.

Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its service program, training, diagnostic and technical materials, and operating techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

**6.1   Obligations of AAMCO.**   AAMCO agrees that before AAMCO grants any additional franchise in the county or MSA/PMSA in which Franchisee is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

AT-94-9 (1) Resale                                                    2

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical columns in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchisee fee revenue for the provision of said services will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

AAMCO agrees that it will assist in the design of advertising promoting the business of AAMCO franchisees and the services they sell. AAMCO agrees to make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to Franchisee during this Agreement the quantities of those AAMCO products mentioned in the Appendix A of this Agreement, as Franchisee wishes from time to time to order subject to AAMCO's standard credit approval; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

7.1 **National Creative Advertising.** Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions.

7.2 **Local Advertising.** Franchisee acknowledges and agrees that all advertising must be approved by AAMCO in advance of its use and Franchisee agrees not to use any advertising unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

Franchisee acknowledges that, in addition to Yellow Pages advertising, it is mandatory to employ advertising at the local level and to participate in and pay for advertising programs and promotional activities at the local level. Franchisee specifically agrees to establish and adhere to a local advertising budget, subject to AAMCO's approval.

Franchisee further agrees to share local advertising expenses with other franchisees in the Designated Market Area (DMA) as defined by A.C. Nielsen Company which may change from time-to-time. If Franchisee's AAMCO center is not part of a DMA or is the only AAMCO center in a DMA, Franchisee agrees to share local advertising with other franchisees in related or adjoining DMAs if coverage from local advertising in the related or adjoining DMAs permeates within Franchisee's market or if directed by AAMCO.

Franchisee acknowledges that AAMCO has the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to any such agency.

If Franchisee fails to pay promptly an amount due his advertising agency or his local advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from Franchisee. Franchisee acknowledges that all local advertising benefits him and the other franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute to his local AAMCO advertising group or pool, local advertising expenditures by such group or pool confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local AAMCO advertising group or pool seek enforcement of this obligation.

7.3 **National Advertising.** Franchisee agrees to participate in advertising programs at the national level if established or directed by AAMCO. Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO. Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

8.1 **Signs.** Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO. No other signs regardless of content, size or construction may be erected or used.

9.1 **Standards and Specifications for Equipment and Inventory.** AAMCO shall fix and determine all standards, specifications and requirements for the equipment, including diagnostic and technical equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, as long as they conform to these standards and specifications. AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.

Franchisee acknowledges that AAMCO may change such standards, specifications and requirements from time-to-time, and agrees to make any additional purchases of equipment and/or supplies needed to comply with such updated requirements.

AT-94-9 (1) Resale                                       3

9.2   **Equipment, Supplies and Inventory.**   If Franchisee requests to purchase equipment, supplies and inventory from AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee.   If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quantity, and adjust the price, after notice to Franchisee.

9.3   **Operating Inventory.**   Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO, and agrees that the use exclusively of parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications) is an essential condition of the performance of this Agreement.   Franchisee agrees to purchase exclusively parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications).   At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications.   Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom Franchisee purchases, and actual parts and assembly sets for testing and examination.   AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination.

Franchisee acknowledges and agrees that the training of his technical employees is essential to the successful operation of his Center.   Franchisee, therefore, agrees to participate in and pay for the AAMCO Tech Video Library Program according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications.   Franchisee further agrees that at the request of AAMCO he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training.   AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

9.4   **Product Warranties.**   There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

10.1   **Warranty Program.**   Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his center or at some other authorized AAMCO center.   Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

10.2   **Warranty Payment Rates.**   Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required.   The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.

Franchisee agrees to pay within ten (10) working days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of Franchisee.   If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to Franchisee for such payments.

10.3   **Prohibition Against Other Warranties.**   Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO, which warranty is made by Franchisee to the customer and not by AAMCO either to any customer or to Franchisee.   There are no warranties expressed or implied made by AAMCO to the customer in connection with any product or service furnished by AAMCO under this Agreement.

11.1   **Accounting Forms.**   Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request.   Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request.   Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO.   Franchisee agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.   Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request.   Franchisee agrees to promptly deliver to AAMCO records, reports and copies of tax returns which AAMCO may request.   Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO as part of standard auditing procedures.   Franchisee further agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO

11.2   **Inspection of Records.**   AAMCO's representative may enter Franchisee's center to inspect books and records to verify the accuracy of Franchisee's reports.   Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

11.3   **Damages.**   If at any time Franchisee's actual gross receipts are greater than Franchisee's reported receipts by two percent (2%) or more, then Franchisee shall pay AAMCO immediately any deficiency in franchise fees together with interest pursuant to section 14.1, calculated from when such fees should have been paid.   In addition, Franchisee agrees to pay AAMCO for any and all expenses connected with AAMCO's examination of Franchisee's reporting practices, including but not limited to reasonable administrative, accounting and attorneys' fees and the costs incurred in connection with the investigation of Franchisee's recordkeeping and obtaining inspection of his records.

Franchisee further acknowledges and agrees that the actual damages sustained by AAMCO in the event of underreporting of gross receipts are difficult to ascertain and that in addition to the fees, interest and expenses stated above, Franchisee shall also pay AAMCO liquidated damages in an amount equal to the franchise fees due plus interest calculated pursuant section 14.1. These liquidated damages shall be in addition to any other remedies AAMCO may have.

11.4   **Financial Statements.**   Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year.  In addition, within 60 days after the end of each semi-annual period, Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6-months and a Balance Sheet as of the last day of the 6-month period.  All statements required by this paragraph may be unaudited but must be prepared by an accountant, and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles.  All references in this section to "year" of Franchisee shall mean either calendar or fiscal year, as adopted by Franchisee.

12.1   **Insurance.**   Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, as directed by AAMCO, including but not limited to garage liability, garage keeper's legal liability, garage keeper's direct primary coverage and workers' compensation insurance, including coverage for AAMCO as an additional named insured. Franchisee acknowledges that AAMCO reserves the right to increase the amounts of insurance coverage required by this section and agrees to comply with any such increased amounts after notice from AAMCO; AAMCO agrees to act reasonably in determining such increased amount.  In no event shall the amounts of coverage be less than $1,000,000 per occurrence, bodily injury and property damage combined. Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid.  Each certificate shall provide that the policy may not be cancelled as to AAMCO without thirty days' prior notice to AAMCO.  Franchisee shall pay AAMCO its costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

12.2   **Indemnity Agreement.**   Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's center.  This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or willful conduct by Franchisee or by any of his employees, servants or agents.  The minimum amounts of insurance outlined in section 12.1 shall not be construed to limit liability under this section of the Agreement.

Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

12.3   **Independent Contractor.**   Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever. Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever. Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO.  Franchisee specifically agrees that he shall not do so.

13.1   **Security Deposit.**   Franchisee acknowledges that he has deposited with AAMCO the sum of $3,000 as security for compliance with all the provisions of this Agreement.  This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement.  AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints.  It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine.  AAMCO may send written notice to Franchisee of defaults calling for action under these provisions to Franchisee's last known address.  Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

Franchisee agrees that should the amount on deposit with AAMCO become less than $3,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $3,000.

AAMCO agrees to pay interest on this deposit at the rate of 3% less than prime rate as established by a leading bank as determined by AAMCO averaged over the preceding twelve months to a maximum of six percent (6%) per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section.

AT-94-9 (1) Resale                                    5

**14.1 Defaults in Payment.**   Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued. Any such amount not so paid when due, as well as any amount due from Franchisee under any section of this Agreement, shall bear interest at the annual rate of eighteen percent (18%), or the legally permissible rate, whichever is less, from thirty (30) days after the due date until payment. The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts. Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under sections 7.1, 7.2 and 7.3 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but, AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of Franchisee.

In the event that Franchisee is in default in the payment of any franchise fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Agreement, including an amount which may be due to an advertising association, pool, or agency under sections 7.1, 7.2 and 7.3 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO or the party bringing such action shall be entitled to recover the amount in default, with any interest thereon at the rate set forth above, and costs of the action, together with reasonable attorneys' fees. In the event that a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 7.2 of this Agreement, then Franchisee acknowledges that such group or pool shall also be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor. Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 7.1.

In the event that Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages advertising directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

**15.1 Assignment.**   This Agreement is a personal obligation of Franchisee and his rights to the use of AAMCO's service marks and trademarks are not assignable nor transferable under any circumstances except in strict compliance with the provisions herein.

(a) In the event of Franchisee's death, his rights shall pass to his heirs or next of kin on the condition that such heirs or next of kin must immediately attend and successfully complete AAMCO's training course as provided for in this Agreement. Such person or persons must attend the AAMCO Operator's Training Course by the third class offered after the date of the death of Franchisee. Failure to do so will result in the termination of all rights conferred under this Agreement.

(b) If Franchisee, as an individual, desires to transfer his rights under this Agreement to a corporation, he may do so only upon the following terms and conditions:

(1) Franchisee's name remains on the Agreement and the corporation is added as a co-franchisee on the Agreement.

(2) The corporation is newly organized and its activities are confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3) Franchisee is the owner of the majority of the stock of the corporation, is the principal executive officer of the corporation and has full and complete authority to act for the corporation. In the event of the death of Franchisee who is the majority shareholder of such corporation, then the provisions of section 15.1(a) above will apply, except that such heir or next of kin must be the majority shareholder of the corporation, principal executive officer of the corporation and must have full and complete authority to act for the corporation.

(4) All money obligations of Franchisee under this Agreement must be satisfied.

(5) The corporation must sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement. It is expressly understood that the assumption of Franchisee's obligation by any corporation does not limit Franchisee's personal obligations under this Agreement and Franchisee and the corporation shall be jointly and severally liable.

(6) The corporation shall disclose in writing the names and addresses of all of its officers and directors and, whenever there is a change in any such officer or director, shall immediately notify AAMCO of such change. Franchisee acknowledges that AAMCO has the right to approve the corporation's officers and directors, which approval shall not be unreasonably withheld, and agrees that any officer and director not approved by AAMCO will be immediately removed from such position and shall not be permitted to have any involvement in the operation of the corporation or the AAMCO center.

(c) If Franchisee organizes or has organized a corporation in connection with the operation of the center, the capital stock shall not be sold, assigned, pledged, mortgaged or transferred without the prior consent of AAMCO. There may be a sale of all of the capital stock of the corportion subject to the same conditions listed in subparagraph (b) above, to a purchaser as though the person acquiring such stock were a purchaser under section 15.2 of this Agreement. All stock certificates shall have endorsed upon them the following:

The transfer of this stock is subject to the terms and conditions of a FranchiseAgreement dated_____19_____ , between AAMCO Transmissions, Inc., and

(d)  If Franchisee forms or has formed a partnership for the operation of the AAMCO center, then all partners must sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement but such agreement does not limit Franchisee's obligations hereunder.  A partner cannot sell, assign, pledge, mortgage or transfer his interest without AAMCO's prior written consent.

(e)  If Franchisee is a partnership and all partners desire to transfer their rights under this Agreement to a corporation, they may do so only upon the terms and conditions set forth in subparagraph (b) above and provided that one of the partners is the majority stockholder of the corporation, the principal executive officer of the corporation and has full and complete authority to act for the corporation.

(f)  Franchisee agrees that this Agreement will not be transferred to a corporation or to an individual by transfer of stock or by any other means.

15.2  Sale.   If Franchisee desires to sell his AAMCO center, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser executes AAMCO's then current form of franchise agreement at the fee structure provided below.  AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that any and all financial obligations of Franchisee are fully paid and satisfied.  The accounts which must be satisfied include sums owed for local, national or national creative advertising, Yellow Pages advertising, sums owed to any advertising agency, sums due AAMCO pursuant to the terms of this Agreement, including any amounts due because of a default of any provision of this Agreement, and any sums due other AAMCO dealers.  Franchisee and other person or persons having control of the affairs of a corporate franchisee shall execute a general release of all claims against AAMCO and a termination of franchise, and Franchisee shall pay AAMCO the sum of $2,000 for expenses in connection with the administration and approval of this sale.  Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has successfully completed any training course which may be provided for in the then current form of franchise agreement.

(a)  If Franchisee sells his AAMCO center without the aid or assistance of AAMCO then the purchaser must sign a current form of franchise agreement.  The purchaser has the option of signing an agreement for only the balance of Franchisee's term at the franchise fee being paid by Franchisee; or, if signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of Franchisee's term at the franchise fee being paid by Franchisee, and the second portion of the term will be for the remainder of the fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

(b)  If Franchisee has listed his center with AAMCO or the purchaser has received a presentation from AAMCO's franchise sales department within the past 12 months, then the purchaser must sign a current form of franchise agreement for a fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

15.3  Attempted Sale, Assignment or Transfer.   If Franchisee attempts to sell, assign or transfer his AAMCO center without following the procedures required by this Agreement, then any such attempted sale, assignment or transfer is void.  In the event that such attempted assignment or transfer is to a corporation wholly or partially owned or controlled by Franchisee, then, at AAMCO's option, Franchisee agrees on behalf of the corporation that the attempted assignment or transfer shall subject the corporation to all the terms and conditions of this Agreement.  Franchisee shall remain jointly and severally liable for all obligations and responsibilities of this Agreement, including money owed, despite any such attempted and/or unauthorized sale, assignment or transfer of Franchisee's AAMCO center.

15.4  Notification of Resale.   Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

16.1  Duration of the Franchise.   This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years. Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years.  Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a)  Any default set forth in section 18.1 of this Agreement notwithstanding  compliance with paragraph 18.1(b); or

(b)  Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and trade name, or seriously interferes with AAMCO's business interests.

In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO.  AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

17.1  No Waiver by AAMCO.   AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1 shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

AT-94-9 (1) Resale                                     7

**18.1  Termination.**

(a)  AAMCO may terminate this Agreement by giving written notice to Franchisee upon the occurrence of any of the following:

(1)  A breach by Franchisee of sections 5.2 or 20.2 of this Agreement.

(2)  If Franchisee unreasonably delays in opening his center. In no event shall a period of less than eight (8) months be considered an unreasonable delay. In the event that this Agreement is terminated pursuant to this subsection, then AAMCO may elect to retain as liquidated damages the deposit paid by Franchisee pursuant to section 3.1.

(3)  If Franchisee terminates or attempts to terminate this Agreement for any reason. If this Agreement is terminated under this subsection, then AAMCO may elect to retain the deposit made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4)  In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is appointed for Franchisee's business, or Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5)  Failure to make any payments to an advertising agency and/or local advertising group or pool, or to make any other advertising payments required pursuant to section 7 of this Agreement.

(6)  Failure to make any payments required under any provision of this Agreement.

(7)  If Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8)  If Franchisee sells or attempts to sell, transfer or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(9)  If Franchisee shall commit a violation of any provision of this Agreement.

(b)  Upon receipt of notice pursuant to section 18.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement. For any other default, except as set forth below in section 18.1(c), Franchisee shall have thirty (30) days within which to cure completely any such default. Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination of this Agreement. It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c)  Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the center, shall be effective upon receipt by Franchisee, and the provisions of section 18.1(b) shall not be applicable thereto.

**19.1  Procedures after Termination.**

(a)  Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of the current term by virtue of Franchisee's failure to renew as provided in section 16.1 (sometimes herein called "Expiration"), Franchisee shall cease to be an authorized AAMCO franchisee and shall:

(1)  Promptly pay AAMCO all sums due and owing.

(2)  Promptly pay AAMCO the sum of $5,000 to be held by AAMCO to cover the costs of warranty work for customers of Franchisee's former center. If there is any amount remaining unused two (2) years after the date of termination and Franchisee has complied fully with the provisions of section 19, then any such amount shall be returned to Franchisee.

(3)  Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4)  Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letterheads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5)  Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6)  Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(7)  At AAMCO's discretion, sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

AT-94-9 (1) Resale                                                    8

(b)  Upon termination or Expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the center and all equipment contained therein.  If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention at the time of termination or, in the case of Expiration, within ten (10) days prior to the Expiration of the current term of this Agreement.  The full purchase price of the equipment and parts shall be:

(1)  In the case of Expiration, the fair market value of the equipment and parts then located at the center, less all outstanding liabilities of the center.

(2)  In the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight-line basis, less all outstanding liabilities of the center.  AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the center and to pay such debts and liabilities from such funds.  If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine.  In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or of the center and Franchisee shall remain responsible for all outstanding debts and liabilities of the center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds.

(c)  If, within five (5) days after termination or Expiration, Franchisee fails to remove all displays of the AAMCO name and trademark and any other materials of any kind from the center which are identified or associated with AAMCO, AAMCO may enter the center or premises to effect such removal.  In such event, AAMCO shall not have any liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d)  If, within three (3) days after termination or Expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate all telephone listings or service and any registration or filing of any fictitious name, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court or attorney of any court of record as its true and lawful attorney for him and in his name, and on his behalf to take all such action as may be necessary or appropriate to amend, transfer or terminate all such telephone listings and service and registrations and filings of such fictitious name, without liability to Franchisee for doing so.  In the event that any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19(d), the telephone company, Yellow Pages publishers and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive proof of AAMCO's exclusive rights in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer and Franchisee hereby releases and waives any claim of any kind that he may have against any telephone company and/or yellow or white page directory publisher as a result of their implementing the transfer, amendment or termination set forth herein.

(e)  The termination of this Agreement shall not affect, modify or discharge any claim, rights or causes of action which AAMCO may have against Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

19.2  Covenant Not-To-Compete.     Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO.  Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark.  Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:

(a)  During the term of this Agreement and any renewal thereof, Franchisee shall not directly or indirectly engage in any business the same as, similar to or in competition with AAMCO or any other AAMCO Franchisee, except for the business contemplated by this Agreement.

(b)  For a period of two (2) years after the termination of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center. The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

(c)  Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO.  Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled.  If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(d)  Franchisee agrees that the provisions of this covenant not-to-compete are reasonable.  If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

20.1  Applicable Laws.     Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to Franchisee's business.

AT-94-9 (1) Resale                                                        9

20.2  **Federal Trade Commission Orders.**    Franchisee acknowledges receipt of copies of FTC Orders No. 8816 and C-2305 and Franchisee agrees to adhere to the provisions of these Orders in his dealings with the public and with AAMCO.

21.1  **Jurisdiction.**  This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania, shall be interpreted according to the laws of Pennsylvania and Pennsylvania law shall apply to any claims arising out of, connected to or relating to this Agreement or its performance.

Franchisee hereby agrees that mailing to his last known address by certified or registered mail or by any overnight carrier service which provides a receipt of any process shall constitute lawful and valid process. Franchisee agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania or to the Court of Common Pleas of Philadelphia or Montgomery County, Pennsylvania in any action, proceeding or counterclaim, whether at law or at equity, in any manner whatsoever which arises out of or is connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue.

21.2  **Jury Trial Waived.**    Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

21.3  **Severability.**   In the event that any portion, term or provision of this Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be considered as if the provision has never been a part of it.

21.4  **Notice.**   Whenever this Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested or overnight mail to the other party at the addresses set forth below, unless notice is given of a change of address. However, Franchisee agrees that notice may be sent to him at the AAMCO transmission repair center operated pursuant to the terms hereof.

21.5  **Recovery of Costs and Attorneys' Fees.**   In any court or arbitration proceeding brought by either party hereto arising out of or based upon this Agreement or its performance, the prevailing party shall recover all court costs, attorneys' fees and other expenses relating to such proceeding from the non-prevailing party.

22.1  **Mediation and Arbitration.**

(a)  Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b)  All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO. Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

23.1  **Entire Agreement.**     This Agreement consisting of ten (10) pages and attachments contains the entire agreement between the parties concerning Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties.  Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:                                                     AAMCO TRANSMISSIONS, INC.

_____            By: _____

_____                  _____
WITNESS                                                     FRANCHISEE   Christopher M. Pedone    (SEAL)

_____                  _____
WITNESS                                                     FRANCHISEE                            (SEAL)
                                                                          Howard S. Beyer

Address for AAMCO Transmissions, Inc.          Address for Franchisee:
One Presidential Boulevard
Bala Cynwyd, PA  19004


AT-94-9 (1) Resale                                   10

AMENDMENT TO FRANCHISE AGREEMENT

WHEREAS, a Franchise Agreement was entered into on October 17, 1998 between AAMCO Transmissions, Inc., formerly known as AAMCO Automatic Transmissions, Inc., Franchisor, and Howard S. Beyer Franchisee, for a center located at 3530 North Courtenay Parkway, Merritt Island, FL  32953

WHEREAS, Franchisee desires to enter into a partnership composed of himself and Christopher M. Pedone;

WHEREAS said Franchise Agreement provides that partners must be added to the Franchise Agreement;

NOW, THEREFORE, in consideration of the promises set forth herein, and intending to be legally bound hereby, the parties agree that the said Franchise Agreement is amended as follows:

1.      The Franchisees shall be Christopher M. Pedone and Howard S. Beyer jointly and severally, doing business as a partnership.  The Franchisees hereby further agree to be bound jointly and severally by all of the terms, conditions, covenants and obligations of said Franchise Agreement.

2.      All of the other terms, conditions, covenants and obligations set forth in said Franchise Agreement shall remain in full force and effect, and be binding upon both Christopher M. Pedone and Howard S. Beyer.

IN WITNESS WHEREOF, the parties have hereto set their hands and seals this 19th day of September, 2001.

ATTEST:                                                         AAMCO TRANSMISSIONS, INC.

_____              BY:_____

_____              _____
Witness                                                             Franchisee – Christopher M. Pedone

_____              _____
Witness                                                             Franchisee – Howard S. Beyer

# EXHIBIT B





*The Trusted Experts for over 50 Years*

May 29, 2013


<u>Via Certified Mail – Return Receipt Requested,</u>
<u>and Regular Mail</u>
Mr. Chris Pedone
Mr. Howard Beyer
dba AAMCO Transmissions
3530 N. Courtenay Pkwy, #101
Merritt Island, FL 32953

Re: <u>Notice of Breach of Franchise Agreement</u>

Dear Messrs. Pedone and Beyer

This letter shall serve as formal Notice of the following breaches of your franchise agreement dated September 19, 2001 with AAMCO Transmissions, Inc. ("ATI"):

1. Failure to timely pay certain amounts due to ATI as required under the franchise agreement. As of today's date, the following amounts are owed to ATI:

| | |
|---|---|
| Equipment/Supplies | $300.76 |
| Note | 10,700.00 |
| Intershop | 1,740.84 |
| Recoverable Expense | 8,237.50 |
| Reported Franchise Fees due | 25,127.12 |
| Audit | 43,459.03 |
| National Creative Advertising | 2,400.00 |
| Telephone | 36.91 |
| FOCUS | 323.71 |
| Internet Advertising | 122.65 |
| Interest | 22,337.39 |

TOTAL - $114,785.91

2. Failure to pay weekly assessments to your local AAMCO Ad Pool. As of today's date, you owe the Ad Pool the past-due amount of approximately $55,000.00.

3. Additionally, you have failed to timely submit weekly business reports and pay the corresponding weekly franchise fees due to ATI for the past 52 weeks. The estimated franchise fees due for this time period is $34,922.88.

Pursuant to the terms of your franchise agreement, you have ten (10) days from your receipt of this Notice to: (i) pay all amounts due under the franchise agreement and (ii) pay all amounts due to the Ad Pool.

If you fail to cure the breaches under your franchise agreement within the ten (10) days, ATI intends to terminate your franchise without further notice. Please understand that, upon termination, ATI will aggressively enforce all post termination obligations under the Franchise Agreement including your continuing non compete obligation. This Notice is without prejudice to any rights ATI may have to terminate your franchise based on other violations of the franchise agreement.

Sincerely,

William Jameson
Associate General Counsel


cc: Brian O'Donnell
    Richard Kolman
    Bruce Chidsey
    Mike Sumsky

R: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY

lete items 1, 2, and 3. Also complete
. If Restricted Delivery is desired.
your name and address on the reverse
t we can return the card to you.
1 this card to the back of the mailpiece,
the front if space permits.

A. Signature

X

☐ Agent
☐ Addressee

B. Received by ( Printed Name ) | C. Date of Delivery

Addressed to:

Pedone / Howard Beyer

ico Transmissions

o N. Courtenay PKwy, #101

itt Island, FL 32953

D. Is delivery address different from item 1?   ☐ Yes
    If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Number
r from service label)   7008 1140 0003 3281 5438

3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**   LAW
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To   Chris Pedone / Howard Beyer / Aamco Transmission
Street, Apt. No.;
or PO Box No. 3530 N. Courtenay PKwy, #101
City, State, ZIP+4   Merritt Island, FL 32953

PS Form 3800, August 2006   See Reverse for Instructions

7008 1140 0003 3281 5438

CERTIFIED MAIL™

# EXHIBIT C



*The Trusted Experts for over 50 Years*

July 11, 2013

**Via Overnight Mail,**
**Certified Mail – Return Receipt Requested,**
**and Regular Mail**

Messrs. Chris Pedone and Howard Beyer
c/o AAMCO Transmissions
3530 N. Courtenay Pkwy., #101
Merritt Island, FL 32953

Re:     **Termination of Franchise Agreement**
        AAMCO Transmissions Center
        3530 N. Courtenay Pkwy, #101
        Merritt Island, FL 32953

Dear Messrs. Pedone and Beyer:

This letter shall serve as Formal Notice of the Termination of your AAMCO franchise for the center located at 3530 N. Courtenay Pkwy, #101, Merritt Island, FL 32953 effective immediately.  On May 29, 2013, AAMCO Transmissions, Inc. ("ATI") sent you a letter informing you that you had ten (10) days within which to pay to ATI and to your local AAMCO Ad Pool outstanding amounts owed.  You have failed to remit payment for the past-due amounts identified within the 10-day period and, therefore, ATI is exercising its right to terminate your franchise. A copy of the May 29, 2013 letter is enclosed.

Effective immediately, ATI demands that you immediately comply with the post-termination covenants of the franchise agreement by, among other things, (1) promptly paying ATI all sums due and owing to ATI and to the local Ad Pool which ATI will collect on the Ad Pool's behalf; (2) immediately and permanently discontinuing the use of the mark AAMCO and all similar names and marks; (3) promptly surrendering to ATI all signs, training materials, manuals, videos, stationery, letterhead, forms and other printed material containing AAMCO marks; (4) immediately and permanently discontinuing all advertising as authorized AAMCO dealers; and (5) promptly transferring to ATI or ATI's designee each telephone listing for the Center under the designation AAMCO or any similar designation.

As of today's date, you owe ATI the following amounts:

| | |
|---|---:|
| Equipment/Supplies | $ 347.10 |
| Note | 10,700.00 |
| Recoverable Expense | 8,237.50 |
| Reported Franchise Fees | 25,127.12 |
| National Creative Advertising | 2,550.00 |
| Telephone | 36.91 |
| FOCUS | 783.75 |
| Interest | 24,389.20 |
| Internet Advertising | 148.58 |
| Intershop | 1,826.53 |
| Audit | 43,459.03 |
| **TOTAL** | **$117,605.72** |

Additionally, as of today's date, ATI's records reflect that the AAMCO weekly business reports for 58 weeks throughout 2012 and 2013 have not been received from you. These reports must be submitted and the applicable franchise fees due thereon must be paid, which would be above and beyond the $117,605.72 noted above. A listing of the weeks of the outstanding reports is enclosed.

Furthermore, you have failed to pay weekly assessments to the local AAMCO Advertising Pool. As of today's date, you owe the Pool the past-due amount of $57,000.00

If you fail to comply with the post-termination covenants of the franchise agreement, ATI will initiate a legal proceeding seeking an order compelling your compliance and will seek to recover from you the expenses associated with the legal proceeding as provided for in Section 21.5 of the franchise agreement.

Sincerely,
AAMCO Transmissions, Inc.

Richard L. Kolman
Vice President - Law & General Counsel

cc:  Brian O'Donnell
     Ron Gratz
     Jack Bachinsky
     Bruce Chidsey
     Scott Brennan
     Jerry Ferrier
     Eric Kotz
     Will Jameson



*The Trusted Experts for over 50 Years*

May 29, 2013

<u>Via Certified Mail – Return Receipt Requested,</u>
<u>and Regular Mail</u>
Mr. Chris Pedone
Mr. Howard Beyer
dba AAMCO Transmissions
3530 N. Courtenay Pkwy, #101
Merritt Island, FL 32953

      Re:  <u>Notice of Breach of Franchise Agreement</u>

Dear Messrs. Pedone and Beyer

This letter shall serve as formal Notice of the following breaches of your franchise agreement dated September 19, 2001 with AAMCO Transmissions, Inc. ("ATI"):

      1.     Failure to timely pay certain amounts due to ATI as required under the franchise agreement.  As of today's date, the following amounts are owed to ATI:

| | |
|---|---:|
| Equipment/Supplies | $300.76 |
| Note | 10,700.00 |
| Intershop | 1,740.84 |
| Recoverable Expense | 8,237.50 |
| Reported Franchise Fees due | 25,127.12 |
| Audit | 43,459.03 |
| National Creative Advertising | 2,400.00 |
| Telephone | 36.91 |
| FOCUS | 323.71 |
| Internet Advertising | 122.65 |
| Interest | 22,337.39 |

      TOTAL - $114,785.91

      2.     Failure to pay weekly assessments to your local AAMCO Ad Pool.  As of today's date, you owe the Ad Pool the past-due amount of approximately $55,000.00.

3. Additionally, you have failed to timely submit weekly business reports and pay the corresponding weekly franchise fees due to ATI for the past 52 weeks. The estimated franchise fees due for this time period is $34,922.88.

Pursuant to the terms of your franchise agreement, you have ten (10) days from your receipt of this Notice to:  (i) pay all amounts due under the franchise agreement and (ii) pay all amounts due to the Ad Pool.

If you fail to cure the breaches under your franchise agreement within the ten (10) days, ATI intends to terminate your franchise without further notice. Please understand that, upon termination, ATI will aggressively enforce all post termination obligations under the Franchise Agreement including your continuing non compete obligation. This Notice is without prejudice to any rights ATI may have to terminate your franchise based on other violations of the franchise agreement.

Sincerely,

William Jameson
Associate General Counsel

cc:  Brian O'Donnell
     Richard Kolman
     Bruce Chidsey
     Mike Sumsky

| Center # | Franchisee | Week Ending | # Missing Reports |
|---|---|---|---|
| 14862 | CHRIS PEDONE/HOWARD BEYER | 7/6/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/29/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/22/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/15/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/8/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/1/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 5/25/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 4/13/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 2/23/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 2/16/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 2/9/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 2/2/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 1/26/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 1/19/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 1/12/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 1/5/2013 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 12/29/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 12/22/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 12/15/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 12/8/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 12/1/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 11/24/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 11/17/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 11/10/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 11/3/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 10/27/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 10/20/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 10/13/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 10/6/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 9/29/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 9/22/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 9/15/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 9/8/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 9/1/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 8/25/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 8/18/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 8/11/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 8/4/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 7/28/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 7/21/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 7/14/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 7/7/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/30/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/23/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/16/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/9/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 6/2/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 5/26/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 5/19/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 5/12/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 4/28/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 4/21/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 4/14/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 4/7/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 3/31/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 3/24/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 3/10/2012 | 1 |
| 14862 | CHRIS PEDONE/HOWARD BEYER | 1/21/2012 | 1 |

58

Selection Status:

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

1. Article Addressed to:

Messrs. Chris Pedone + Howard Beyer

C/o AAMco Transmissions

3530 N. Courtenay Pkwy, #101

Merritt Island, FL 32953

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)  ☐ Yes

2. Article Number
   (*Transfer from service label*)  7012 2210 0000 7963 7216

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To Messrs. Pedone + Beyer / c/o AAMco Trans.
Street, Apt. No.; or PO Box No. 3530 N. Courtenay Pkwy, #101
City, State, ZIP+4 Merritt Island, FL 32953

PS Form 3800, August 2006      See Reverse for Instructions

7012 2210 0000 7963 7216



From: (800) 292-8500
Warren Berest
AAMCO Transmissions
201 Gibraltar Road
Suite 150
Horsham, PA 19044

Origin ID: SEGA

**FedEx**
Express

**E**

J13111302120326

Ship Date: 10JUL13
ActWgt: 0.5 LB
CAD: 1926141/INET3370

Delivery Address Bar Code



SHIP TO: (800) 292-8500      BILL SENDER

**Messrs. Chris Pedone & Howard Beyer**
**c/o AAMCO Transmissions**
**3530 N. Courtenay Pkwy., #101**

**MERRITT ISLAND, FL 32953**

Ref #      51
Invoice #
PO #      51
Dept #

**THU - 11 JUL 3:00P**
**STANDARD OVERNIGHT**

TRK#    **7961 9897 9554**
0201

**32953**
FL-US

**XH COIA**

**MCO**





518G1/AA04/93AB

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT D

09/17/2010  12:07    6106680210                    AMERICAN DRIVELINE                      PAGE  02/03

# \# 14862

## PROMISSORY NOTE

$25,555.59                                                          September ___, 20__

FOR VALUE RECEIVED, the undersigned CHRIS PEDONE (hereinafter "Borrower"), for good and valuable consideration, does hereby promise to pay to AAMCO TRANSMISSIONS, INC. ("Holder"), the principal sum of Twenty Five Thousand, Five Hundred, Fifty-Five dollars and Fifty-Nine ($25,555.59), bearing zero percent (0%) interest, and payable in Fifty-Two (52) consecutive weekly payments of Two Hundred Fifty dollars ($250.00) commencing September 20, 2010 and continuing each Monday, and a balloon payment of $12,555.59 due on or before September 20, 2011.

Notwithstanding the foregoing, in the event Borrower hereafter sells the AAMCO Transmission Center now located at 3530 N Courtenay PRWK #101, Merritt Island, Florida 32953 (the "Center") to a third party prior to the Note being paid in full, the entire remaining balance on the Promissory Note shall become immediately due and payable to Holder.

Payment of this Note shall be made in lawful money of the United States of America as at the time of such payment is legal tender for payment of public and private debts; payment shall be made to the Holder at 201 Gibraltar Rd., Suite 100, Horsham, PA 19044 or such other place as the Holder may designate in writing. Payments shall be through Electronic Funds Transfer, which may be initiated by Holder. Borrower shall have the right to prepay any and all amounts due hereunder without penalty.

If undersigned shall default in the payment of this Note for a period of more than ten (10) business days when due, then the Holder may declare this Note and all other agreements, including but not limited to the Franchise Agreement, in effect between Borrower and Holder or any of its parents, subsidiaries and affiliates immediately in default.

If HOLDER believes in good faith that the prospect of payment is at any time substantially impaired, the Holder shall accelerate the date of this Note and demand immediate payment in full of the total sum of this Note.

Notwithstanding the foregoing interest rate, if Borrower shall default in the payment of this Note, interest shall accrue at the lesser of Eighteen percent (18%) per year or the highest amount permissible by law.

None of the rights and remedies of Holder hereunder shall be waived, or affected, by failure to delay in exercising them. All remedies conferred on Holder, or any other instrument or

1

agreement shall be cumulative and not exclusive.

If any action is commenced to enforce the collection of this Note, the undersigned agrees to pay Holder's reasonable costs of collection, including reasonable attorney's fees in such action.

The undersigned and each endorser of this Note, hereby waive presentment, demand, notice, protest and all other demands and notices required or permitted hereunder and by law in connection with the delivery, acceptance, performance, default or endorsement of this Note, assents to any extension or postponement of the time of payment of any other indulgence, to any substitution, exchange or release of collateral and/or to the addition or release of any other party or person primarily or secondarily liable on this Note.

The undersigned hereby authorizes and empowers any attorney or attorneys or the prothonotary or clerk of the court of competent jurisdiction, upon the occurrence of any default hereunder, to therein confess or enter judgment against the undersigned in favor of Holder for all sums due or to become due from Borrower to Holder hereunder, with costs of suit and release of errors, and reasonable attorney's fees.  Reasonable attorney's fees shall be One thousand five hundred dollars ($1,500.00) or 18%, whichever is greater.  Such authority and power shall not be exhausted by an exercise thereof from time to time, as often as there is occasion therefor.

The undersigned also hereby declare that they are not in the military service of the United States or any State or Territory or United States ally, and that they have an income of more than Ten thousand dollars ($10,000.00) a year at the time of this signing, that this is a commercial transaction, and that they knowingly and intelligently waive any opportunity to have a hearing at which the burden of proving fault, execution of obligation, amount due, and other elements necessary to execution would be on the creditor.

The terms, conditions, rights and obligations set forth in this Note are in no way intended to be construed as an extinguishment or limitation of the terms, conditions, rights and obligations set forth in any previous documents between the parties hereto.

This Promissory Note has been entered into and shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

CHRIS PEDONE                                              Witness

2